630 A.2d 59

YORK FEDERAL SAVINGS AND LOAN ASSOCIATION

v.

William ANDERSON and Kim Anderson, a/k/a Kim DeAngelis.

YORK FEDERAL SAVINGS AND LOAN ASSOCIATION

v.

Ruben A. TORRES and Foon Chung.

YORK FEDERAL SAVINGS AND LOAN ASSOCIATION

v.

Harry L. GEIGER, Sheriff of Pike County.

Appeal of YORK FEDERAL SAVINGS and
LOAN ASSOCIATION, Appellant.

Commonwealth Court of Pennsylvania.

Argued June 17, 1993.

Decided July 27, 1993.

Reargument Denied Sept. 17, 1993.

Rebecca S. McClure, for appellant.

Jay R. Rose, for appellee.

Before PELLEGRINI, and KELLEY, Judges, and NARICK, Senior Judge.

KELLEY, Judge.

York Federal Savings & Loan Association (York Federal) appeals from an order of the Court of Common Pleas of Pike County (trial court) denying York Federal's exceptions to the commission being charged by Harry L. Geiger, Sheriff of Pike County (sheriff) in real estate mortgage foreclosure sales.

The sole issue before us is whether the poundage charged by the sheriff for conducting real estate execution sales should be based upon the total amount bid for the property at the sale or upon the total debt owing to the executing creditor where, as here, the executing creditor purchases the property.[1]

The facts in this case are not in dispute. York Federal instituted two mortgage foreclosure actions against the real property of defendants William Anderson and Kim Anderson, a/k/a Kim DeAngelis (Anderson), and defendants Ruben Torres and Foon Chung (Torres). Pursuant to writs of execution issued by the sheriff, sheriff's sales of defendants' real property were held on October 30, 1991 and December 4, 1991, respectively. There was no competitive bidding at either sale and, as a result, York Federal purchased both properties for its opening bids of sheriff's costs plus $1.00. York Federal's bid was $304.47 in the Anderson case and $327.27 in the Torres case.

York Federal received the sheriff's statement of fees, costs and poundage for the two sales on November 4, 1991 and December 5, 1991, respectively. In each case, the sheriff charged poundage in the amount of 2% of the total debt owing

1. Black's Law Dictionary 1052 (5th ed. 1979) defines "poundage fees" as "[a]n allowance to the sheriff, commissioner, or the like, of so much upon the amount levied under an execution."

on each property at the time of the sale. This resulted in poundage being charged in the amount of $1,826.46 on Anderson and $1,088.33 on Torres.

York Federal filed exceptions to the sheriff's commission, requesting the trial court to order the sheriff to reduce his commission to 2% of the total amount bid by York Federal at the sales, or $6.08 for the Anderson sale and $6.45 for the Torres sale. The trial court denied York Federal's exceptions. This appeal follows.

We find the precise question before us one of first impression before an appellate court in this commonwealth. Before the trial court, York Federal contended that in accordance with section 4(b) of the Sheriff Fee Act, (Act), Act of July 6, 1984, P.L. 614, 42 P.S. § 21104(b),[2] the sheriff is only entitled to 2% of the total amount bid at the two sales at issue in this case. On appeal to this court, York Federal contends that the poundage charged by the sheriff for conducting real estate execution sales should be based upon the total amount bid for the property, rather than upon the total debt owing the executing creditor.

The trial judge noted and we agree that the crucial language in interpreting this statute in light of the facts before us is the "amount ... credited to the purchaser". The sheriff argues that the phrase "whether paid to the sheriff or credited to the purchaser" can only mean that the poundage base is the "total amount" paid to the sheriff *or* the amount "credited to the purchaser". The sheriff contends therefore, that the statute permits poundage to be paid on something other than the amount bid. We agree.

In *Ashbridge Oil Co., Inc. v. Irons,* 123 Pa.Commonwealth Ct. 629, 554 A.2d 629 (1989), a judgment in mortgage fore-

---

**2.** Section 4(b) provides, in pertinent part:

**Real estate executions**

(b) **Additional fees.**—Except under subsection (a)(8), the sheriff shall receive as an official fee a commission, based upon the total amount bid for the property, whether paid to the sheriff or credited to the purchaser, of 2% of the first $250,000 and of 0.5% of the remaining amount.

closure was entered against Irons in the trial court by Ashbridge Oil Co., Inc. The sheriff received from the prothonotary the requisite papers for a sale of Irons' residence to satisfy the judgment. The sheriff served the writs of execution and notified all parties in interest of the service and that the sheriff's sale was scheduled for March 11, 1988. Subsequent to notification, Irons cured the mortgage default on March 10, 1988. Thereafter, Ashbridge immediately notified the sheriff that the sheriff's sale of Iron's residential property would not be necessary. The sheriff in connection with the aborted sale, filed a bill of costs with the prothonotary that included an assessment against Irons of $521.76 for poundage pursuant to sections 4(b) and 7 of the Act. Irons filed exceptions to the assessment of poundage contending in part that section 4 of the Act does not permit recovery of poundage when default is cured prior to sale.

We held in *Ashbridge* that the Act permits recovery of poundage even when the writ related to real property has not been executed, because the mortgagor cured the default on the day before the scheduled sale. We also noted in *Ashbridge* that the fee in question is not a fee for actually conducting the sale but is a reasonable cost of proceeding to foreclosure, permissible under section 4 of the Act. We find the rationale of *Ashbridge* applicable in the present matter.

York Federal contends that under the sheriff's interpretation of section 4(b), the creditor would always be paying an exorbitant fee to the sheriff which would have absolutely no relationship to the amount of work required by the sheriff, the amount of risk involved in the sale, or the amount bid at the sale by the purchaser. We find this argument to be without merit.

Based on our analysis of the statute in this case and in light of the dearth of case law, we conclude that our acceptance of York Federal's position would lead to the result, in cases where when the purchaser is the lien creditor, that the lien creditor would be credited by the Sheriff with the full amount of the outstanding judgment even when the sheriff received cash from the purchaser only in the amount of the minimum

bid. We do not envision that the legislature meant for such an unreasonable result.

Accordingly, the decision of the trial court in this matter is affirmed.

## ORDER

NOW, this 27th day of July, 1993, the order of the Court of Common Pleas of Pike County, dated February 5, 1992, at No. 1578–1990, is affirmed.